S. Peter Serrano
United States Attorney
Eastern District of Washington
Tyler H.L. Tornabene
Courtney R. Pratten
Assistant United States Attorneys
Echo D. Fatsis
Law Clerk for the United States Attorney's Office
Post Office Box 1494
Spokane, Washington 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. DAVOD ANTONIO BECERRIL, Defendant. | Case No. 1:23-CR-2029-SAB United States' Response to Defendant's Motion Pursuant to Rule 29 (ECF No. 94) |

Plaintiff, United States of America, by and through Tyler H.L. Tornabene and Courtney R. Pratten, Assistant United States Attorneys for the Eastern District of Washington, and Echo D. Fatsis, Contract Law Clerk, submits the following response to Defendant's Motion for Judgment of Acquittal filed on January 28, 2026. ECF No. 94.

## I.     INTRODUCTION

On June 7, 2023, a grand jury in the Eastern District of Washington returned an Indictment charging Defendant DAVID ANTONIO BECERRIL ("Defendant") with sixteen felony counts relating to his participation with the fraudulent "telemedicine" company, Real Time Physicians ("Real Time") between February 2018 and September 2019. ECF No. 1. The case proceeded to trial, which

United States' Response to Defendant's Rule 29 Motion - 1

commenced on September 22, 2025, in Yakima, Washington. ECF No. 76. The United States rested its case on Friday, September 26, 2025, after presenting testimony of fourteen witnesses, including testimony of the individual who designed the online web platform utilized by Defendant, experts, and several victims from around Washington State, as well as a more than hour long recorded interview of Defendant by federal agents.  ECF Nos. 83, 86-1. Over the course of trial, the United States also admitted into evidence over 200 exhibits detailing the charged fraud scheme and conspiracy and Defendant's specific role in it. ECF No. 86-2.

After the United States rested on the fifth day of trial, Defendant made an oral Motion for Acquittal under Federl Rule of Criminal Procedure 29. ECF No. 83. The United States responded and the Court reserved ruling on the motion, pursuant to Rule 29(b). *Id.* Defendant did not put on a case at trial. *Id.* On September 29, 2025, the jury return a verdict and found Defendant guilty beyond reasonable doubt of all sixteen charged counts. ECF No. 89.

Defendant filed the instant memorandum in support of his Rule 29 Motion to Acquit on January 28, 2026. ECF No. 94.  The United States now responds.

## II.    DISCUSSION

### A.    Rule 29 Standards

Federal Rule of Criminal Procedure 29 permits a criminal defendant to move for judgment acquittal following the close of the government's case or after a jury verdict. Fed. R. Crim. Pro. 29(a), (c). A court may not grant a Rule 29 motion if, "viewing the evidence in the light most favorable to the prosecution, 'any rational trier of fact could have found the essential elements of the offenses charged beyond a reasonable doubt.'" *United States v. Rosales*, 516 F.3d 749, 751-52 (9th Cir. 2008) (quoting *United States v. Hinton*, 222 F.3d 664, 669 (9th Cir. 2000)).  Under this standard, the Court must presume the jury resolved any conflicting inferences

United States' Response to Defendant's Rule 29 Motion - 2

in the United States' favor. *Id*. at 752. Importantly, it is the defendant's burden to bear. *See, e.g., United States v. Savanh*, 727 Fed. Appx. 931, 935 (9th Cir. 2018).

In reviewing a defendant's motion for acquittal a district court's function "is quite narrow." *United States v. Bernhardt*, 840 F.2d 1441, 1448 (9th Cir. 1988). A district court "must bear in mind that it is the jury's exclusive function to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." *United States v. Dreitzler*, 577 F.2d 539, 545 (9th Cir. 1978), *cert. denied*, 440 U.S. 921 (1979); *see also United States v. Alarcon-Simi*, 300 F.3d 1172, 1176 (9th Cir. 2002). Accordingly, a district court "may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial." *United States v. Nevils*, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc); *see also Jackson v. Virginia*, 443 U.S. 307, 326 (1979). And when "'faced with a record of historical facts that supports conflicting inferences' a reviewing court 'must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Nevils*, 598 F.3d at 1164 (quoting *Jackson*, 443 U.S. at 317).

Similarly, the Ninth Circuit has routinely held that circumstantial evidence is sufficient to support a jury's verdict and defeat a motion to acquit. Specifically, the Ninth Circuit has held that circumstantial evidence of a defendant's knowledge is sufficient to support a jury's verdict. *United States v. Cordova Barajas,* 360 F.3d 1037, 1041 (9th Cir. 2004); *United States v. Hardrick*, 766 F.3d 1051, 1057 (9th Cir. 2014). Moreover, inferences drawn from any circumstantial evidence may also be sufficient to sustain a conviction. *Barajas*, 360 F.3d at 1041; *United States v. Reyes-Alvarado*, 963 F.2d 1184, 1188 (9th Cir. 1992).

Not only can inferences drawn from circumstantial evidence support a conviction, but a jury is free to disbelieve the statements of a defendant and infer the opposite of their testimony or statements to support its verdict. *Barajas*, 360

United States' Response to Defendant's Rule 29 Motion - 3

F.3d at 1041 ("a rational juror could infer, based on the observations of the arresting officers, the inferences that can be drawn from the totality of the circumstances, and Mr. Barajas's implausible testimony, that Mr. Barajas aided and abetted in cultivating marijuana, and that he did so knowingly and intentionally."); *United States v. Scholl*, 166 F.3d 964, 979 (9th Cir. 1999) (holding that the jury's disbelief of the defendant's testimony furnished a partial basis for supporting its guilty verdict); *United States v. Kenny*, 645 F.2d 1323, 1346 (9th Cir. 1981) ("When the defendant elects to testify, he runs the risk that if disbelieved, the trier of fact may conclude that the opposite of his testimony is the truth.").

>    **B.**    **The Evidence at Trial Overwhelmingly Supports the Jury's Guilty Verdicts on the Substantive Counts (Counts 3-16)**

Defendant argues that the United States did not offer sufficient evidence for *any* rational juror to convict him on *any* of the sixteen counts on which the jury convicted. Specifically, Defendant argues that there was insufficient evidence that he "knowingly and willfully participated in a Medicare fraud scheme or conspiracy." ECF 94 at 2. In support of his argument, Defendant claims his theory of unauthorized signature replication and "non-conforming signatures" somehow translate to invalidating the jury's finding that Defendant made the specific false representations on the specific orders, prescriptions, and other specified electronic forms, as charged in Counts 3-7 (the substantive counts of Health Care Fraud) and Counts 12-16 (the Making False Statements Relating to Health Care Matters charges), and the specific uses of the interstate wires regarding specific electronic forms as charged in Counts 8-11 (the substantive counts of Wire Fraud). *See* ECF No. 94 at 3-4.

Defendant concedes however, as he must, that the United States did present direct evidence that Defendant knowingly and intentionally signed some orders. ECF No. 94 at 2 (". . . no evidence showing that Dr. Becerril knew his signatures was being copied *except* for the times he intentionally signed prescription pages" (emphasis added)). Defendant further concedes, as he must, that there was

United States' Response to Defendant's Rule 29 Motion - 4

sufficient evidence of the existence of a conspiracy. ECF No. 94 at 2 (". . . evidence established, at most, that co-conspirators implemented and operated an illegal electronic prescription system. . ."). It is difficult if not impossible to reconcile those two concessions with Defendant's argument that nonetheless there was insufficient evidence for any rational juror to find him guilty of knowingly participating in the charged conspiracy with the intent to defraud, especially when the voluminous evidence adduced at trial is viewed in the light most favorable to the United States.

At bottom, Defendant's argument that there was insufficient evidence showing that he authorized every signature on every order bearing his name and for which he was dutifully paid by the conspiracy, is a red herring: whether or not any or all of the jurors found Defendant signed all of the orders he was paid for signing, there was ample evidence supporting their verdict that he knowingly and willfully signed, with the intent to defraud, the specific orders and other forms charged in the substantive counts of which he was convicted and that he knowingly entered the conspiracy, as charged in Counts 1 and 2, and that he did so with the intent to defraud and to help accomplish the objects of the conspiracy, namely defrauding Medicare.

Moreover, as discussed below in more detail, the United States admitted into evidence concrete proof that Defendant signed hundreds of false and fraudulent orders for Real Time, orders that violated basic ethical cannons of modern medicine and obvious corresponding Medicare requirements (i.e. that prescribed tests and DME must be medically necessary etc.), and that Defendant was paid tens of thousands of dollars for those signatures. Under the standards for a Rule 29 motion, the fact that the United States admitted evidence that Defendant did sign the charged orders and forms, and Defendant concedes that there were times that he did "intentionally sign[] prescription pages" (ECF No. 94 at 2), his motion for judgement of acquittal should be denied as the evidence must be viewed in the

United States' Response to Defendant's Rule 29 Motion - 5

light most favorable to the United States, and the Court must presume the jury resolved any conflicting inferences in favor of the United States. *Hinton*, 222 F.3d at 752.

In his Motion, Defendant argues that the United States failed to "establish knowledge and intent" apparently for each of the sixteen counts requiring such evidence. ECF No. 94, at 2. Defendant argues the evidence offered was insufficient because the United States did not establish that Defendant created the Real Time online platform, or that he had control over it. *Id.* However, such evidence was not necessary to support a conviction.  Further, the undisputed evidence at trial showed that Defendant contracted with Real Time to, among other things,

> . . .use all medical information and report forms provided by [Real Time] including the Member's medical history and record, as well as the Real agent's notes from the initial call from the Member, all of which information shall be sorted in [Real Time's] on-line database and shall complete all forms including assessment of medical necessity for a prescription in such timeframes as required by [Real Time] generally within 24 to no later than 48 hours or based on the pre-determined schedule of Doctor.

*Exhibit 1 at pg. 1*.  The undisputed evidence also showed that Defendant's compensation from Real Time was directly tied to the number of orders he signed for Real Time pursuant to his contract.  For instance, Defendant's signed contract with Real Time provided that Defendant's compensation was $20 per assessment and that "[a]n assessment is defined as an individual patient assessment folder which may include multiple prescriptions or requisitions forms that are reviewed by the doctor on a specific date." *Exhibit 1 at pg. 13*.

At trial, the United States admitted detailed evidence and testimony of the Real Time "on-line database" that Defendant had contractually obligated himself to utilize in conducting the "patient assessments" for which Real Time was paying him.  Specifically, the United States admitted the testimony of Mr. Santa, who created and maintained the Real Time Physician Platform and who testified as to the precise mechanics of that platform including all the ways in which physicians

United States' Response to Defendant's Rule 29 Motion - 6

contracted with Real Time, like Defendant, interfaced with the platform in providing "patient assessments" and signing orders.  Mr. Santa further testified that Defendant, according to the routine data the platform maintained, used his unique login information, opened the platform, viewed requisition forms, and signed orders for DME and genetic tests for Medicare beneficiaries.

The United States also admitted into evidence screenshots and a video showing the jury how a doctor contracted with Real Time, like Defendant, utilized the portal. *Exhibits 100-104, 105A, 106-115A, 117, 118.* Mr. Santa testified that the doctor should have clicked through all the supporting documents before signing or approving any requisition order. *Exhibit 114, 114A.* The United States also admitted the instructions Defendant was provided on how to use the platform. *Exhibits 114, 114A.* Mr. Santa further testified that for every order, a contracted physician, like Defendant, had to manually sign their name in a box to approve the order, and that signature was applied to appropriate places on the supporting documents. *Exhibits 104, 105A.* The United States even admitted into evidence one of the touchpads Real Time Physicians mailed to its physicians, like Defendant, to sign orders with. *Exhibits 115, 115A.* Mr. Santa further testified that contracted physicians, like Defendant, could review every order they signed and see where their signature was applied on the supporting documentation. *Exhibits 111, 112.* Mr. Santa also testified that the platform tracked every action and every page the contracted physicians accessed. *Exhibit 504.* Significantly, the United States also offered the testimony of Ms. Lauren McNulty, a data analyst from HHS-OIG, who testified that, based on the data maintained by Real Time, Defendant spent on average only 26 seconds on each order he signed. *Exhibits 500-503.*

Defendant argued at trial, and now in his memorandum, that some medical necessity letters bore a different version of Defendant's signature than the requisition order. ECF No. 94, at 2-4. The jury was free to reject that argument based on its own review of the dozens of admitted signatures of Defendant's in

United States' Response to Defendant's Rule 29 Motion - 7

evidence, or to disregard the argument as irrelevant to a rational analysis of the elements of each charged count based on the jury instructions. *See* ECF No. 85 at 4, 6, 7, 10, and 12.

Notwithstanding this reality, in his motion Defendant argues about an "autofill system" on which it does not appear there was any testimony offered at trial and Defendant cites to none. *See* ECF No. 94 at 4, 5.  Nevertheless, the United States offered evidence to explain why documentation for one beneficiary may have had two versions of Defendant's signature. For example, the United States admitted evidence that an order letter associated with a requisition order could appear in the Real Time Physician's platform as a document separate from the order itself, but under the same order number, and therefore need a separate signature. *Exhibit 112.* Further, if a separate signature was necessary the platform maintained information about when *each* document was signed. *Exhibit 112.* Additionally, Defendant could have reviewed his signature on both the requisition order and the letter, if separate, as soon as he signed the documents. *Exhibit 112, 114A.* Similarly, the United States presented testimony that the signature may get distorted slightly by being expanded to be large or shrunk to be smaller, and therefore could appear to be different on the same document. Moreover, the United States admitted evidence that occasionally there were difficulties with signing orders, which could result in multiple signatures. *See Exhibits 113, 609, 226R, 227R, 228R, 229R, 230R.* Tellingly, it is undisputed that the contract Defendant signed with Real Time Physicians acknowledges that a physician would be compensated "for signing a revised prescription or requisition form due to a modification…" (*Exhibit 1*), thus indicating that sometimes a contracted physician, like Defendant, may have to sign additional forms or re-sign a revised form, which could result in different signatures, and for which they were compensated.

Defendant had actual knowledge, or alternatively at least was deliberately ignorant that he was signing false orders (*see* ECF No. 85 at 22), containing for

United States' Response to Defendant's Rule 29 Motion - 8

instance the material falsity that he had a patient-physician relationship with the patient, which would be submitted and billed to Medicare. When interviewed by law enforcement, Defendant tried to minimize his behavior by stating that he thought Medicare would deny the claims if Medicare had issue with them. *Exhibit 7.* Defendant acknowledged that Medicare was being billed for these orders. *Id.* Defendant also stated he only read the top portion of the orders. *Id.* In fact, as the jury saw on dozens of admitted orders bearing Defendant's signature, the top of the orders displayed information about the beneficiary's insurance as Medicare. *See e.g. Exhibit 103, 109.*

The evidence at trial showed that as a physician enrolled to bill Medicare, Defendant was responsible for making sure he was complying with Medicare requirements. As Ms. Lori Weber (from the Medicare Administrative Contractor Noridian) testified, Medicare requires DME and genetic tests to be medically necessary and ordered, referred, or prescribed by the beneficiary's treating physician. On each form Defendant signed that the DME or genetic test was medically necessary, despite him having no knowledge of the beneficiary's health and never having spoken to the beneficiary. When Defendant signed the orders, he knew he was making a false representation about medical necessity because he admittedly knew he had not spoken to any beneficiaries (*Exhibit 7*), he had not reviewed any of their medical records, and for some, the evidence showed he didn't even know if they were alive or had the limbs for which he prescribed DME such as braces.

Ultimately, the evidence overwhelming shows that Defendant signed the specific orders and forms charged. As yet another example of the specificity of the evidence against Defendant, the United States admitted into evidence an audio recording of an interview of Defendant in which Defendant admitted he signed every single order ("I signed everything they gave me," (*Exhibit 7* at pg. 64) and estimating at one point that he could get through 10-20 patient assessments in an

United States' Response to Defendant's Rule 29 Motion - 9

hour) despite admittedly having never met the beneficiaries, and further identified for investigators an order specific to one of the charged beneficiaries, V.G, (*see generally,* Counts 3, 4, 5, 8, 9, 10, 12, 13, 14).   In Defendant's own motion Defendant admits he did sign orders. ECF No. 94, at 2. With the presumption in favor of the United States, the evidence at trial including Defendant's own admissions to law enforcement a rational jury could have found he had the requisite knowledge and intentionally signed each of the orders in the charged counts and did so with the intent to defraud having contracted for and received tens of thousands of dollars in compensation as a direct result.

Viewing all the evidence in the light most favorable to the United States, a rational jury could have found Defendant had the requisite knowledge and intent to satisfy the elements of each count as charged. *See Nevils*, 598 F.3d at 1164.

**C. The Evidence at Trial Overwhelmingly Supports the Jury's Guilty Verdicts on Counts 1 and 2 – Conspiracy**

Defendant also argues that the evidence at trial was insufficient for any rational juror to convict Defendant of the conspiracy charges since Defendant believes the United States did not offer evidence of "meetings, communications, profit-sharing, or directives" to suggest Defendant knowing joined the fraudulent scheme. ECF No. 94, at 3. Defendant's argument ignores the evidence and defies common sense.

First and foremost, the United States introduced into evidence Defendant's signed contract with Real Time that provided for paying Defendant $20 per "patient assessment." *Exhibit 1.*  A reasonable, if not inevitable inference from just that fact alone is that Real Time was sharing some of its profits from its scheme with Defendant.  That fact coupled with the overwhelming, and conceded, evidence of the existence of the Real Time conspiracy (*see* ECF No. 94 at 2), leads to the very rational conclusion that Defendant was a knowing co-conspirator who himself profited from the conspiracy.

United States' Response to Defendant's Rule 29 Motion - 10

Moreover, at trial the United States admitted into evidence that Defendant had knowledge even when signing his employment contract with Real Time, that he was engaging in a fraudulent scheme. Specifically, at trial the United States offered the testimony of actual physicians in the Eastern District if Washington, who were the primary care physicians for victim beneficiaries of Defendant and who testified that it is improper and immediately concerning if a physician was paid per signature, like Defendant was. Those primary care physicians further testified as to the importance of informed consent by patients and to only sign prescriptions for things that are medically necessary for that patient.   The jury was also provided evidence, from Defendant's own recorded statements to investigators, of his extensive training and experience as a physician.  Especially viewing the evidence in the light most favorable to the United States, a rational juror could certainly concluded that Defendant was well aware upon signing the contract with Real Time and upon signing his first prescription for money from Real Time prescribing a test or DME for a patient he'd never met, that he was engaging in a scheme to defraud and was intending to help accomplish its fraudulent objectives.

### III.    CONCLUSION

For the foregoing reasons, Defendant has not met his heavy burden, his Motion for Judgment Acquittal should be denied, and the jury verdict of guilty on all counts should stand.

Dated:   February 12, 2026.        Todd Blanche
                                    Deputy Attorney General

                                    *s/Tyler H.L. Tornabene*
                                    Tyler H.L. Tornabene
                                    Assistant United States Attorney

                                    *s/Courtney R. Pratten*
                                    Courtney R. Pratten
                                    Assistant United States Attorney

United States' Response to Defendant's Rule 29 Motion - 11

_s/Echo D. Fatsis_
Echo D. Fatsis
Contract Law Clerk

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system.


_s/ Tyler H. L. Tornabene_
Tyler H.L. Tornabene
Assistant United States Attorney

United States' Response to Defendant's Rule 29 Motion - 12